## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SUSAN DONAHUE,

     *Plaintiff,*

vs.

     Case No. 18-2344-EFM

PROBASCO & ASSOCIATES, P.A.

     *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Susan Donahue incurred several debts for medical services.  An action on debts like Donahue's, under Kansas law, ordinarily must be brought within five years.[1]  But that five-year limitation period restarts whenever the debtor pays any part of the debt.[2]  A timely lawsuit resulting in a judgment against Donahue occurred as to one of her debts, dating from 2002.  Not so, however, as to her other three debts, including one dating from 2006.  In November 2017, Donahue reached out to the law firm retained to collect her four debts, Defendant Probasco & Associates, P.A. ("P&A").  A few calls later, Donahue sent P&A a partial payment.  That partial payment led to additional calls, a garnishment attempt on her 2002 debt, and a lawsuit on the 2006 debt that P&A filed but quickly dismissed.  Donahue now claims that P&A violated the Fair Debt Collection Practices Act ("FDCPA").[3]  Specifically, she claims that P&A, hoping to revive and enforce her 2006 debt, made a series of false statements and misleading omissions throughout their

---

[1] *See* K.S.A. § 60-511(1).
[2] *See* K.S.A. § 60-520(a).
[3] 15 U.S.C. § 1692 et seq.

several phone conversations.  Both Donahue and P&A now move for summary judgment in their respective favor.  Donahue also moves to strike certain exhibits used by P&A in support of its summary judgment position.  And P&A also moves to strike certain factual arguments made in Donahue's summary judgment-supporting reply brief.  For the reasons that follow, the Court:

- Denies in part and grants in part Donahue's Motion to Strike Defendant's Exhibits (Doc. 105);

- Denies P&A's Motion to Strike Plaintiff's Reply in Support of Her Motion for Summary Judgment (Doc. 109);

- Denies in part and grants in part P&A's Motion for Summary Judgment (Doc. 95); and

- Denies in part and grants in part Donahue's Motion for Summary Judgment (Doc. 97).

## I.      Background

### A.      Donahue's Motion to Strike P&A's Exhibits

Initially, the parties dispute which exhibits the Court may consider in resolving their summary judgment motions.  Specifically, Donahue moves to strike various of P&A's exhibits on either admissibility-based or discovery-based grounds.

#### 1.      Probasco's and Rockwell's Affidavits

On admissibility-based grounds, Donahue seeks to narrow the summary judgment record under Federal Rule of Civil Procedure 56(c)(4).  Rule 56(c)(4) directs that an affidavit used to support or oppose a summary judgment motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show the affiant's competency to testify to the matter stated.[4]  Under this rule, Donahue moves to strike various statements and supporting exhibits contained within affidavits sworn by Lou Probasco, a licensed attorney who acts as P&A's sole

---

[4] Fed. R. Civ. P. 56(c)(4).

manager, and Marlene Rockwell, a private investigator used by P&A to inquire into matters surrounding service affidavits executed earlier in this case.

Instead of "striking" an affidavit or its supporting exhibits, as requested by Donahue, the "'better approach is for the court to consider each [objected-to piece of evidence] and, to the extent it may assert a fact which is not admissible evidence, simply exclude the requested fact from the court's ultimate findings.'"[5]  Having reviewed the parties' arguments and the relevant law, the Court, for this Order's purposes, rules as follows:

- Donahue's lack-of-personal-knowledge objections to paragraphs 9 and 13 of Probasco's affidavit are overruled.  Probasco has sufficient personal knowledge, as P&A's sole manager, to testify to P&A's understanding of Donahue's residential history.

- Donahue's improper-opinion-testimony objections to any implied legal conclusions contained in paragraphs 13, 40, and 42 of Probasco's affidavit are sustained.  Whether Donahue *evaded* service, whether her debts were *enforceable* under a tolled statute of limitations, and whether any FDCPA-violating representations made by P&A were *unintentional*, are among the many ultimate issues in this case to be decided under the facts and law.  As such, the Court disregards any conclusion on those issues implied in Probasco's statements.

- Donahue's hearsay objections to paragraph 53 of Probasco's affidavit, paragraphs 6 and 10[6] of Rockwell's affidavit, and P&A's file notes and spreadsheets are overruled.  The Court considers the file notes and spreadsheets, not as proof that Donahue actually lived at the addresses listed, but instead as proof of P&A's efforts to both locate and attempt service on Donahue.  Debi Higgins' and A.J. Jensen's statements contained within Probasco's and Rockwell's affidavits, however, are hearsay.  Nevertheless, as P&A uses the evidence to support a service-of-process argument that ultimately amounts to an unavailing motion to reconsider its original motion to dismiss, the Court provisionally considers the proffered evidence for that sole purpose.[7]

---

[5] *Turner v. Unified Gov't of Wyandotte Cty.*, No. 18-2202-KHV, 2020 WL 584456, at *1–*2 (D. Kan. Feb. 6, 2020) (quoting *Murray v. Edwards Cty. Sheriff's Dep't*, 453 F. Supp. 2d 1280, 1284 (D. Kan. 2006), *aff'd* 248 F. App'x 993 (10th Cir. 2007)).

[6] As P&A notes in its response, the specific statement referenced in Donahue's motion as paragraph 9 actually corresponds to paragraph 10 of Rockwell's affidavit.  The Court makes that correction here.

[7] *See* 5C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1364, pp. 475–481 (3d ed.) ("A wide range of material may be introduced in conjunction with a Rule 12(b) motion, subject, of course to the district court's discretion to reject any extra-pleading matter if the judge feels that it is not substantial or comprehensive enough to facilitate the disposition of the action.  Illustrative of the type of

- Donahue's best-evidence-rule objection to P&A's transcriptions of particular recorded telephone calls between Donahue and P&A is overruled. As Donahue has put original recordings of certain calls in evidence, the best-evidence rule permits consideration of P&A's transcripts of those same recorded calls.[8] As to those remaining calls for which P&A produces transcripts but no recording, the Court notes that, at this stage, P&A's evidence need only be admissible in "content or substance" not "in . . . form."[9] And Donahue has specified no substantive inaccuracies with P&A's transcripts.

## 2.    November 25, 2017 Handwritten Note

Donahue also argues, under Federal Rule of Civil Procedure 37(c), that the Court should disregard a previously undisclosed document P&A now uses to oppose her summary judgment motion. As part of her FDCPA claims, Donahue maintains that, despite her intent to pay down only her 2002 debt, P&A enticed her to apportion a $75.00 payment among her various debts in order to restart the statute of limitations period on her 2006 debt. In her affidavit, she states that she included with her payment "a note that [she] wanted the payment to be applied only to the 2002 [debt]."[10]  Just after the close of written discovery and just before filing its response to Donahue's summary judgment motion, P&A disclosed a handwritten note, dated November 25, 2017, which Donahue purportedly authored and sent to P&A along with a $75.00 payment. At the top right corner, the note lists, without further annotation, four numbers corresponding to the P&A accounts for Donahue's four debts. Below those unannotated account numbers, the note, in relevant part, reads "Please apply to *accts* for Susan Donahue for Nov[.] payment."[11]  P&A offers the note to contradict Donahue's claim that she intended her $75.00 payment to go towards only the 2002 debt. Pointing to the note's November 25, 2017 date, Donahue argues that P&A

---

supporting and opposing materials that have been used on various Rule 12(b) motions are . . . hearsay statements in certain circumstances. . . .").

   [8] *See United States v. Chavez*, 976 F.3d 1178, ----,  2020 WL 5807864, at *12 (10th Cir. 2020) (explaining that the best evidence rule "demands that courts exclude secondary evidence of an original's contents unless the original is in evidence.")

   [9] *Pack v. Hickey*, 776 F. App'x 549, 554 (10th Cir. 2019).

   [10] Doc. 98-2, 4.

   [11] Doc. 103-2, 1 (emphasis added).

possessed but failed to timely produce this evidence, leaving her now "[un]able to test the veracity of the document."[12]  P&A responds that it "was previously unaware that a copy of this note still existed as it was not contained within [Donahue's] collection file," but that it timely produced the note once a statement about the note in Donahue's affidavit led it to "re-search[] its records . . . and . . . locate a copy within the bookkeeping records regarding debtor's past payments."[13]  P&A further argues that Donahue's claim of surprise and prejudice is undermined by the fact that Donahue is the note's author.

At issue in this discovery dispute are Federal Rules of Civil Procedure 26 and 37.  Rule 26(a)(1)(A)(ii) generally requires initial disclosures of any document in a party's "possession, custody, or control" that it "may use to support is claims or defenses."[14]  Rule 26(e)(1)(A) then obligates a party to "supplement or correct . . . in a timely manner" any "incomplete or incorrect disclosure.[15]  If a party has failed to provide information required under these rules, Rule 37(c)(1) directs that the party "is not allowed to use that information . . . to supply evidence on a motion . . . , unless the failure was substantially justified or is harmless."[16]

P&A's May 21, 2020 production of the November 25, 2017 note was neither timely nor substantially justified.  P&A does not dispute that the note is a discoverable document used to support its defense.  P&A does not dispute that, throughout this case, it has had "possession, custody, or control" over the note.  Yet, despite Donahue's requests for document production, P&A failed to search its own records to discover and produce the note until over two months after this case's March 16, 2020 discovery deadline.  P&A had a duty "to understand [its] discovery

---

[12] Doc. 105, 9.
[13] Doc. 108, 12–13.
[14] Fed. R. Civ. P. 26(a)(1)(A)(ii).
[15] Fed. R. Civ. P. 26(e)(1)(A).
[16] Fed. R. Civ. P. 37(c)(1).

obligations (and whether there [were] responsive documents to an issued [discovery request]) *before* discovery closes."[17] This duty was not, as P&A implies, dependent on Donahue "put[ting the note] at issue."[18] As such, P&A's belated discovery and attempt to supplement are improper.

Any harm caused by P&A's untimely production, however, does not rise to level required to justify excluding the note from the summary judgment record. In assessing the harm caused by P&A's discovery violation, four factors guide the Court's discretion: (1) the prejudice or surprise to Donahue; (2) the ability to cure any prejudice; (3) the extent to which using the evidence would disrupt the trial; and (4) P&A's bad faith or willfulness.[19] Here, on balance, these factors weigh too lightly in favor of exclusion to grant Donahue's request.

Initially, no argument or evidence before the Court shows that P&A willfully or in bad faith withheld the note's existence, leaving the Court to conclude that negligence alone accounts for P&A's untimely effort to discover and produce the note.

More importantly, Donahue can claim no surprise and only minimal, if any, prejudice; that prejudice, moreover, is ultimately curable without disrupting this case's litigation. Prior to the note's production, Donahue relied on the note's existence and maintained that she had "included a note with her $75.00 payment regarding distribution of her payment."[20] The only surprise now caused by the note's production is its arguable inconsistency with Donahue's recollection of her payment instructions.[21] Though she also claims that P&A's untimely production has left her

---

[17] *United States ex. rel. Feaster v. Dopps Chiropractic Clinic, LLC*, No. 13-1453-EFM-KGG, 2018 WL 1942387, at *4 (D. Kan. Apr. 25, 2018).

[18] Doc. 108, 13.

[19] *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).

[20] Doc. 98, 8; *see also* Doc. 98-2, 4 ("In November 2017, I mailed a money order of $75.00 to [P&A], and included a note that I wanted the payment to be applied only to the 2002 judgment. . . .").

[21] *See Lintz v. Amer. Gen. Fin.*, No. 98-2213-JWL, 1999 WL 619045, at *6 (D. Kan. Aug. 2, 1999) ("[H]armlessness would also cover such situations as the inadvertent omission from disclosure of documents known to all parties.").

unable to test the note's "veracity," she neither elaborates further nor disclaims authorship of the note.  As such, the Court doubts the value of affording Donahue additional discovery.[22]  Indeed, the note's relevance, is limited.  Whether P&A violated the FDCPA in its phone conversations with Donahue depends only on those conversations' content, not on any note Donahue sent P&A.[23]  If at all relevant, the note is simply one of many pieces of evidence that the parties offer in support of a dispute over Donahue's payment intent and P&A's state of mind or motive for its representations, issues that relate only to an FDPCA-provided affirmative defense that immunizes violations resulting from certain unintentional, bona fide errors.[24]  But as discussed below, the Court declines to resolve that issue here.  And ultimately, moving forward to trial, the foundation requirements P&A will face for the note's admission and Donahue's own testimony on the subject are sufficient cures available to Donahue to test the note's veracity.

The Court, therefore, denies Donahue's request to disallow P&A's use of the November 25, 2017 note.

## B.   Factual Background[25]

Donahue incurred multiple debts for medical services provided by Stormont Vail Healthcare, Inc. ("Stormont Vail").  To recover those debts, Stormont Vail retained P&A.  In total, Stormont Vail referred four accounts to P&A for collection.  Two of those four accounts represented debts Donahue incurred in 2002 and 2006 respectively.  In 2004, P&A obtained

---

[22] *Cf. Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) (listing among the facts relevant in deciding whether to extend or reopen discovery "the likelihood that the discovery will lead to relevant evidence").

[23] *Cf. Ferree v. Marianos*, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) *(*unpub.) (evaluating FDCPA violations using "an objective standard, measured by how the least sophisticated consumer would interpret the [communication] received from the debt collector.").

[24] *See* 15 U.S.C. § 1692k(c).

[25] The following facts are either undisputed or, where disputed, presented as such.  In applying any disputed facts to grant summary judgment against a party, however, the Court favors that non-prevailing party's version of the factual dispute. *See LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) ("[W]e view the [summary judgment] evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'").

judgment against Donahue on the 2002 debt.  P&A obtained no judgment, however, on the 2006 debt.

Donahue made no payments to P&A between May 1, 2007, and November 30, 2017.

Both Donahue's whereabouts and P&A's knowledge of Donahue's whereabouts during that time are disputed.  P&A compiled various purported Kansas, Missouri, and California addresses for Donahue, from 2002 to the present.  Some of those addresses Donahue self-reported.  Some of those addresses P&A compiled through its own research.  Despite its efforts to maintain accurate contact information for Donahue, however, P&A struggled at times to serve process on or deliver mail to Donahue.  Donahue maintains, however, that she regularly apprised P&A of her whereabouts.  And, though she once lived on a California *street*, she has not resided in the *state* of California since she was 18, well before P&A received her accounts for collection.

On January 14, 2013, Donahue petitioned this District's bankruptcy court for relief under Chapter 13 of the United States Bankruptcy Code.  Donahue filed schedules acknowledging her debts to Stormont Vail.  The court later confirmed Donahue's proposed repayment plan.  Donahue, however, defaulted on her confirmed plan's scheduled payments.  And on October 24, 2016, the court ordered her bankruptcy case dismissed.

Around September 2017, Donahue contacted P&A about her debts.  Unrecorded calls between Donahue and P&A occurred September 19, 21, and 25, 2017.  A September 19, 2017 entry in P&A's file notes for all four accounts reads: "Susan called. Her Chpt 13 bkrcy dismissed and wants to set up payments. . . .  Thought just one acct and advised three and she said one with judgment so interest on that.  Advised interest on all just more on judgment case.  She agreed to pay $75 a month."[26]  That same day, September 19, P&A sent Donahue a letter memorializing

---

[26] Doc. 96-3, 17, 24, 33, 38.

their arrangement in no terms more specific than that Donahue "make payments of $75.00 per month," with the following tear-off portion at the bottom of the letter:

```
**************************************************
      THIS PORTION MUST BE RETURNED WITH YOUR NEXT PAYMENT!!!

CASE #: 2-41667                   Amount Enclosed $_____
RE:  Stormont Vail HealthCare Inc.
ACCOUNT NAME:  Susan R* Donahue
OTHER CASES:X-: 6-52386, 6-52387, 7-53164

Court Costs Incurred:$126.00  Court Costs Paid: $78.50
Bank:____old poe #417-625-1156          Home Tel#:(   )    -

E. LOU BJORGAARD PROBASCO
Attorney at Law
615 S. Topeka Blvd
Topeka, KS 66603
```
[27]

In P&A's file notes for the 2002 debt but not Donahue's other debts, a September 21, 2017 entry reads:

> Susan called and . . . said that was thinking wanted to get payment posted to judgment acct as int.  Advised all have interest the je case just has more at 12% annually and the others are 10%.  She did not know this.  Told her that this case is her smallest and advised that as she pays then interest will decrease as all payments posted to original amount.  She thought that was good to know as she thought never would be paid so wants to split payments at this time.  She does want to discuss je with Lou [Probasco] but will call back as Lou in mtg.[28]

Donahue, however, states that, during both the September 19 and 21 calls, she agreed to pay only the 2002 debt, for concern that the judgment obtained on that debt would allow P&A to garnish her wages.[29]  A September 25, 2017 call entry in P&A's file notes for the 2006 debt, but not her other debts, reflects Donahue's concern about avoiding garnishment.[30]

On November 27, 2017, shortly after mailing her first $75.00 payment, Donahue called P&A.  P&A recorded this call.  At the call's outset, Donahue advised P&A that, soon, "it should

---

[27] Doc. 103-1, 1.
[28] Doc. 96-3, 17.
[29] Doc. 98-2, 3.
[30] Doc. 96-3, 25.

have" her payment and "a little note" that she had included because she "didn't know the *account*

number."[31]  Then, this exchange occurred:

| | |
|---|---|
| Donahue: | And I do have a question, on the $75.00, you say you're going to distribute that to four accounts. |
| P&A: | Yes. |
| Donahue: | Now, the other ones are uncollectible because there is a statute of limitations. |
| P&A: | We actually, um, have kept the statute up on those by renewing your case.  So, it's actually not expired . . . |
| Donahue: | . . . Okay. |
| P&A: | . . . because we've kept it alive.[32] |
| Donahue: | But there was not judgment on the other ones. |
| | [. . . .] |
| P&A: | Let's see here.  That would be correct. . . .[33] |

When Donahue then asked P&A about the 2002 debt and "renew affidavit" requirements, P&A

suggested it would "leave a message for the legal assistant" to "see if maybe she couldn't get that

figured out and maybe send [Donahue] a letter or something [. . . .] explaining all that."[34]  Donahue

then provided P&A her "newest address."[35]  Before the call concluded, one final exchange touched

on Donahue's $75.00 payment:

| | |
|---|---|
| Donahue: | And then, so, I would like that $75 to go on the one with the judgment. |
| P&A: | Okay. |
| Donahue: | Because, is interest drawing on the ones that haven't had a judgment? |
| P&A: | Um, interest still is being applied, yes.  Because, in the State of Kansas, even if there is not a judgment, um, we can get a lesser amount, it would be 10% annually, whereas if there's a judgment on it, it's 12% annually.[36] |

---

[31] Doc. 101, Ex. 5 (emphasis added).
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*

Donahue then redirected the conversation to other topics, eventually leading P&A to reassure Donahue that "hopefully [its legal assistant] can get something typed up and . . sent to [Donahue]."[37]

P&A made entries in its account notes for this November 27, 2017 call.  Therein, P&A noted:

> Susan called stating she has mailed a payment for $75, wants it applied to case with judgment only as it has interest.  Told her all have interest just lesser amount on the ones without judgment. . . .  She discussed statute up and that she knows laws, spoke with Mary Lee at clerk's office and not sure how we still have judgment as our office has violate[d] the laws repeatedly. . . .[38]

Following those entries, P&A's account notes show an internal request for someone to review Donahue's "files and court system and see what all she is talking about and let her know if we have right to still be pursuing."[39]

Sometime after Donahue's November 27, 2017 call, P&A received Donahue's payment and this challenged handwritten note:



---

[37] Id.
[38] Doc. 96-3, 18, 25, 34, 39.
[39] Id.
[40] See generally Doc. 103-2, 1.

On November 30, 2017, P&A processed Donahue's payment, applying it across her four accounts.[41]  Donahue phoned P&A December 1, 2017, to confirm that it received her November payment.  P&A assured Donahue that, "It looks like we did get it, and it's been posted."[42]  Neither Donahue nor P&A, however, discussed how P&A had applied Donahue's payment.  The next day, on December 2, 2017, P&A made an entry in the account notes for Donahue's 2006 debt, but not her other debts, reflecting its review of Donahue's statute of limitations concern and her other concerns relating to the 2002-debt case.  As to Donahue's statute of limitations concern, the entry reads in relevant part:

> [L]ooks like her case was in br for a while (since 2013).  BR was dismissed in 2016. The statute was tolled while in BR.  Dismissed in 2016 and made payment in 2017. However, looks like this case was NEVER filed upon w/Court.  Looks like she was in skip for a while. At different times.  If pressed, we can try to use the avoiding issue. . . .

> I don't think that we need to move the payment of the 10% interest cases and move to the 12% interest case as her comment [in her November 27, 2017 call] was she wants her payments to be applied to the case with judgment only as it has interest. Well ALL her cases have interest, not just the case with JE[43]

Though P&A apparently sent Donahue a letter following its internal review, that letter said nothing about the statute of limitations and P&A's internal determinations about apportioning Donahue's payment.[44]

Donahue then missed some payments.  She arranged her first extension on January 10, 2018.  In that call, Donahue introduced herself and the issue with a statement that she "pay[s P&A] $75.00 a month for old hospital *bills*."[45]  She then missed another payment, proposed that she make up the missed payments by February 8, but apparently arranged with P&A to send a three-months-

---

[41] Doc. 96-3, 18, 25, 34, 39.
[42] Doc. 101, Ex. 6.
[43] Doc. 96-3, 26.
[44] *Id.*
[45] Doc. 96-7, 1 (emphasis added).

worth payment by February 27, 2018.[46]   Nonetheless, on February 5, 2018, P&A filed a

garnishment request in the 2002-debt case.  A garnishment order issued the next day.[47]

That same day, February 6, 2018, Donahue placed two calls to P&A.  P&A recorded both

calls.  Donahue's first call amounted to the following exchange:

> Donahue:  Hi, this is Susan Donahue.  I had called you and told you I was going to make a payment on the 8th. But I looked on shawneecourt.org, and you guys are attempting to garnish my check.  Is that right?
>
> P&A:  Um, well, let me pull up your account here.  One second.
>
> Donahue:  Okay, because I want to know if there is a court hearing or something to go to on that. [. . .]
>
> [. . . .]
>
> It was filed yesterday.  It says request for garnishment.  Then it says MOT.  I don't know what that means.
>
> P&A:  Okay.  Let me take a look here.   Yeah, it looks like the legal assistant went ahead and issued the garnishment because you hadn't paid since November [. . .]
>
> [. . . .]
>
> Donahue:  Okay.  So, my check Thursday will be garnished?
>
> P&A:  It looks like they will be, yes.
>
> Donahue:  Okay, that will be the last garnishment you guys get [. . . .]
>
> P&A:  Okay.
>
> [. . . .]
>
> Donahue:  So, you're going to get $81.  I was gonna pay you $150 and keep paying the 75.  But, like I told you guys last time in 2013, you won't get another dime after that.[48]

After that call, Donahue called P&A back.  She advised that she was "not going back to work" for

the employer targeted by P&A's garnishment request, and she "want[ed] to dispute . . . the

judgment" underlying that garnishment request.[49]   P&A ultimately took Donahue's preferred

---

[46] *See* Doc. 96-3, 27.
[47] *See* Doc. 103-3, 1.
[48] Doc. 101, Ex 7.
[49] Doc. 101, Ex. 8.

phone number and told Donahue that it would "make a note and . . . have the legal assistant review this and . . . contact" her.[50]  Donahue never received that promised return call.  P&A's file notes for the 2002 debt, however, indicate that P&A responded by a February 10, 2018 letter.[51]  But, as P&A's notes further explain, this letter discussed "why [P&A] filed the garnishment but [did] not respond[] to [Donahue's] accusations" about the process by which P&A obtained judgment on the 2002 debt.[52]

On March 25, 2018, P&A filed a lawsuit against Donahue to recover the 2006 debt. Donahue placed a series of calls to P&A on April 16, 2018, once she discovered the suit.  One of those calls involved this conversation:

| | |
|---|---|
| P&A: | Thank you for holding.  How can I help you? |
| Donahue: | Yeah, I just got off the phone with limited actions.  And I was looking on ShawneeCourt.org, and it shows that you guys are trying to sue me for my medical bills from 2006. |
| P&A: | Ok, well, do you have a case or file number for this account? |
| Donahue: | Ah, the case number, let's see.  I don't have it up here [. . . .] |
| P&A: | Ok, well, let me pull up your account first.  What's the last name? |
| Donahue: | Uh, Donahue. |
| | [. . . .] |
| P&A: | Okay, I looked at the notes in your account.  And it looks like we're doing this every few months, that you're calling us and telling us that we can't proceed on you because it's an old account.  Um, we do have judgment, and we have kept up on that judgment.  So, that is why we were able to pursue you on this debt. |
| Donahue: | No, you have a judgment on one case—not that one.  The one you have is from 2002, not from 2006. [. . .] |
| P&A: | Okay, well, we have two files that are for you.  We have an '02 file and an '18 file. |
| Donahue: | Okay, the '18 file you never got a judgment on that. |

---

[50] *Id.*
[51] Doc. 96-3, 19–20.
[52] *Id.* at 19.

P&A:        Okay, well, regardless, you owe these debts.  It doesn't matter how old
            they are.  We may have just filed the account but you . . .

Donahue:   Statute of limitations on debt collection . . .

P&A:        Ma'am you owe these debts.  You've already agreed to make a payment
            plan.  You defaulted the payment plan.

Donahue:   No, not with that one I didn't.  And I'm [unintelligible] . . .

P&A:        We have sent you letters in regards to this, and we . . .

Donahue:   I haven't received any letters.  I haven't had any service . . .

P&A:        Ma'am . . .

Donahue:   . . . You just happen to [be] looking at ShawneeCourt.org . . .

P&A:        We've set up payments.  We've had this runaround numerous times with
            you that these accounts do exist and that you do owe them.

Donahue:   Okay, what's your statute of limitations that you can do debt collection
            on a 12-year-old medical bill and try to sue me for that 12 years later?

P&A:        Well, I'm going to have to talk with the attorney about it.  Would you
            like for me to leave her a message to have her give you a call?

Donahue:   Um, yeah, do that. . . .[53]

In the days that initially followed that conversation, Donahue received no call from P&A. Donahue then hired an attorney.  As she explained to P&A in an April 20, 2018 call, that attorney would "fight" against the "deceptive practices" that she claimed P&A used to "get [her payment] to go to the [2006] case."[54]  Given that information, P&A advised Donahue that any further communication needed to occur through her attorney.  An internal email about Donahue's call was sent to Probasco that same day.

Probasco responded, both internally and to Donahue, on April 23, 2018.  Entries for the 2002 and 2006 debts reflect Probasco's determination that P&A should dismiss its lawsuit.  The 2002-debt file read: "she is complaining on other statute of limitation . . .  unwritten acknowledgement of debt with promis[e] to pay.  I didn['] t see that in the 5-1[-]07 through 5-1[-]

─────────────

[53] Doc. 107, Exs. 9 & 10.
[54] Doc. 101, Ex. 11.

]12 period on other file . . . SO dismiss other suit as due to SOL and no written acknowledgement of debt."[55]  The 2006-debt file contained a similar entry with this additional comment: "go ahead and dismiss as she has brought up sol and wont make her file affirmative defense, though she was pro[]bably hiding outside of state due multiple address problems, not worth fighting[.]  IF we get letter atty these are our defenses."[56]  Probasco now adds that P&A based its dismissal decision on "the determination that due to past experience with Ms. Donahue it was unlikely that any judgment would be paid, and would not be worth the time and expense of pursuing the cause of action despite the belief that the cause of action was valid due to tolling of the statute of limitations."[57]  In the "first and only" call Donahue ever received from Probasco, Probasco tried to share P&A's dismissal news.  Donahue, however, told Probasco they could not speak as she was now represented.  P&A dismissed the 2006-debt lawsuit five days later, on April 28, 2018.

P&A purportedly operates under certain procedures.  P&A screens potential employees for demonstrated experience in "debt collection practices and FDCPA requirements."[58]  It trains and tests its employees "regarding procedures including time limits, balances, expenses, . . . confidentiality, . . . FDCPA requirements, dispute verification, accuracy, skip tracing time and out of state issues."[59]  If any question arises as to an employee's knowledge about any of those matters, the employee then must watch an FDCPA training video and orally review that video with Probasco.  Despite this training, however, P&A expects its employees to refer "any complex legal questions raised by a debtor" to "a legal assistant or attorney."[60]  And Probasco "regularly reviews

---

[55] Doc. 96-3, 20.
[56] *Id.* at 28–29.
[57] Doc. 96-2, 7.
[58] *Id.* at 8.
[59] *Id*.
[60] *Id.*

new case law, new collection related law, and emails amongst the Kansas Credit Attorney's private list serve in order to keep herself and her staff abreast of any changing interpretation or laws."[61] Pointing to P&A's actions in this case, including all the calls she requested but never received, however, Donahue disputes P&A's claimed adherence to these general procedures.

Donahue filed this lawsuit on June 28, 2018.  The case progressed slowly "because of issues associated with serving [P&A]."[62]  But it progressed.  And on July 9, 2020, the last of the motions with which this Order concerns itself became ripe for decision.

## II.     Cross-motions for Summary Judgment

Donahue and P&A each argue for summary judgment in their respective favor.  P&A also raises a jurisdictional argument and moves to strike arguments from Donahue's summary judgment reply brief.  As explained more fully below, the Court:

- denies P&A's jurisdictional attack;

- denies P&A's motion to strike; and

- denies in part and grants in part the parties' summary judgment motions, because (1) this case's facts show that P&A violated the FDCPA at least two, possibly three, but not four times; yet, (2) disputed facts and unaddressed law leave triable issues as to whether the FDCPA's bona fide error defense shields P&A from any liability.

## A.     Service of Process

In concluding its summary judgment motion, P&A argues that Donahue "lacks jurisdiction due to Insufficient Service of Process and as a result [her] claims are barred by the [FDCPA's] Statute of Limitations."[63]  Proper service is a "necessary procedural prerequisite to a showing of personal jurisdiction."[64]   The Court, therefore, reviews this jurisdictional argument first.

---

[61] *Id.*
[62] Doc. 54, 7.
[63] Doc. 96, 35.
[64] *Commodities Future Trading Comm'n v. Wall Street Underground, Inc.*, 221 F.R.D. 554, 555 (D. Kan. 2004).

Understanding the argument's particulars, however, requires some review of P&A's earlier efforts to dispute service of process.

In answer to Donahue's original and amended complaints, P&A moved for dismissal based on insufficient service of process.[65]  P&A argued that Donahue failed to serve an authorized P&A agent as required under Fed. R. Civ. P. 4(h).  To her response, Donahue attached a supporting "Proof of Service" affidavit wherein her process server, A.J. Jensen, stated, in relevant part: "I served the summons . . . on Ali[s]ia Colbert, who was sitting behind the desk and stated they were waiting for the service documents and who specifically stated that they were authorized to accept service of process on behalf of [P&A]."[66]  Donahue also argued that, notwithstanding the validity of serving Colbert, the entry of appearance of  P&A's registered agent, Lou Probasco, proves that P&A received actual notice of Donahue's suit.  In an October 15, 2018 Order, the Court agreed that service was flawed but denied P&A's motion to dismiss:

> Even though, according to the process server, Colbert claimed she was authorized to accept service on behalf of defendant, Colbert was in fact not authorized to accept service.  The court, however, will not dismiss the complaint based upon this error.  Because [Donahue] in good faith believed she had effectuated proper service, and because [P&A] has been put on notice of the litigation, the court finds good cause exists to extend the time for service under Rule 4(m).[67]

Donahue then unsuccessfully attempted to personally serve P&A 14 times, in addition to several failed attempts arrange with P&A's counsel an agreed time for P&A's agent to be present for service.  This diligence, among other reasons, led the Court to extend Donahue's deadline for accomplishing service and grant her request for alternative service by certified mail.[68]  Just under

---

[65] *See* Docs. 5 & 11.
[66] *See* Doc. 17-1, 2 (emphasis added).
[67] Doc. 20, 4.
[68] *See generally* Doc. 28.

a month later, service via certified mail occurred.  P&A then contested this service.[69]  In addition to finding this challenge untimely, the Court determined that "[Donahue] ha[d] effectuated proper service on [P&A]."[70]

P&A now argues that "newly uncovered evidence" undermines Jensen's affidavit and, thereby, the good-faith finding contained in the Court's October 15, 2018 Order.[71]  As noted above, the service P&A originally disputed in this case was performed by A.J. Jensen.  On May 17, 2019, P&A's private investigator, Marlene Rockwell, contacted Jensen's process-serving firm. Rockwell learned that two "Proof of Service" documents existed for the attempted service Jensen performed on Alisia Colbert: (1) a court-issued "Proof of Service" document that Jensen executed July 30, 2018, and (2) the "Proof of Service" affidavit, executed by Jensen August 30, 2018, that Donahue submitted in response to P&A's dismissal motion.  Whereas the court-issued form simply stated that Jensen "served the summons on Alisia Colbert-Assistant, who is designated by law to accept service of process on behalf of [P&A],"[72] the affidavit, as noted above, stated: "I served the summons . . . on Ali[s]ia Colbert, *who was sitting behind the desk and stated they were waiting for the service documents and who specifically stated that they were authorized to accept service of process on behalf of [P&A]*."[73]  Asked about that italicized language, Jensen told Rockwell that she neither prepared nor altered the affidavit; she simply signed it without reading it.  Colbert, moreover, now affirms that she made no such statements to Jensen.

---

[69] *See* Docs. 41, 2–3; 45-1, 5–8.
[70] Doc. 54, 6–11.
[71] Doc. 96, 35.
[72] Doc. 96-18, 1.
[73] *See* Doc. 17-1, 2 (emphasis added).

This evidence, according to P&A, shows that that "no good faith basis [exists] to believe service was [ever] properly made" on Colbert.[74]  As such, P&A impliedly argues that the Court should have dismissed the case rather than extend the time for service.   P&A further notes that, as the FDCPA's one-year limitation period has now passed,[75] Donahue's claims are barred and fail as a matter of law.

P&A's claims are both procedurally and substantively infirm.

P&A effectively asks the Court to reconsider its October 15, 2018 Order based on new evidence.  Reconsideration of that non-dispositive order is governed by District of Kanas Rule 7.3(b).  That rule required P&A to make any reconsideration request "based on the availability of new evidence" "within 14 days after the order [was] filed unless the court extends the time."[76]  By attacking an October 15, 2018 Order in an April 30, 2020 brief, P&A well exceeds D. Kan. Rule 7.3(b)'s 14-day requirement.

And the Court sees no reason to extend Rule 7.3(b)'s 14-day requirement to accommodate P&A's "newly discovered evidence."  A motion to reconsider based on newly discovered evidence is appropriate only "'where the party produces new evidence *that it could not have obtained earlier through the exercise of due diligence*.'"[77]  Here, due diligence would have produced the same evidence long ago.  A timely discussion with Colbert about the at-issue statement in Jensen's service affidavit would have afforded P&A sufficient information to investigate and contest the affidavit before or reasonably soon after the Court's October 2018 decision.  Instead, P&A

---

[74] Doc. 96, 37.

[75] *See* 15 U.S.C. § 1692k(d).

[76] D. Kan. Rule 7.3(b)(2).

[77] *Bediever Ins. Co. v. Blue Cross & Blue Shield of Kan.*, No. 18-2371-DDC-JPO, 2020 WL 5819612, at * (D. Kan. Sept. 30, 2020) (emphasis added and quotations omitted).

disputed service with other arguments and affidavits[78]—even an additional affidavit from Colbert[79]—before revisiting the issue now raised.

But P&A's argument is not only untimely, its unconvincing.  Federal Rule of Civil Procedure 4(m) affords a district court "discretion . . . to extend the time for service *even when the plaintiff has not shown good cause*."[80]  Here, the Court would have exercised that discretion to reach the same result.  Whether or not Colbert made any representation to Jensen about her capacity to accept service, Donahue indisputably attempted service.  Shortly after that service attempt, Probasco entered her appearance on P&A's behalf.  As the Court stated in its October 15, 2018 Order, "While [that entry of appearance] does not constitute wavier of the Rule 4 requirements, it is evidence that defendant received notice of the summons."[81]  These circumstances, and the Court's preference for "deciding cases on their merits rather than on technicalities,"[82] would have led the Court to allow Donahue additional time to serve P&A.  As such, the service Donahue ultimately accomplished remains valid.

## B.  P&A's Motion to Strike Donahue's Summary Judgment Reply

P&A raises one additional challenge requiring preliminary consideration.  Donahue's reply brief, P&A argues, improperly presents previously unraised arguments "regarding notations in [P&A's] file notes."[83]  P&A specifically identifies only one section of Donahue's reply brief, pages 27–29.  These pages contain argument that P&A's account notes show its uncertainty concerning

---

[78] *See generally* Docs. 26, 41, 45, & 53.
[79] *See* Doc. 53-2.
[80] *Espinoza v. United States*, 52 F.3d 838, 840–41 (10th Cir. 1995) (emphasis added).
[81] Doc. 20, 3–4 (citing *Kitchens v. Bryan Cty.Nat'l Bank*, 825 F.2d 248, 256 (10th Cir. 1987) ("'[F]ederal courts generally take a permissive attitude towards the mechanism employed for service of process when defendant actually received notice.'")).
[82] *Shavey v.Burlington N. Sante Fe R. Co.*, No. 03-2241-CM, 2004 WL 957893, at *1 (D. Kan. Mar. 24, 2004) (citing *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).
[83] Doc. 109, 3.

the legal status of Donahue's 2006 debt and its awareness of Donahue's intent regarding her $75.00 payment.  Lacking an opportunity to respond to these arguments, P&A moves to strike the arguments or, alternatively, file a surreply.  Donahue responds that pages 27–29 add support but nothing new in the way of the parties' dispute of P&A's state of mind or motive for its representations.

Donahue has the better argument.  "In pursuit of fairness and proper notice," the Court generally summarily denies or excludes "all argument and issues first raised in reply briefs."[84]  But the file note-based arguments presented in Donahue's reply "are all responsive to arguments raised in [P&A's] response" and "nothing . .  that should have been an unfair surprise to [P&A]."[85]  Indeed, the arguments are based on the very same evidence P&A submitted with its own motion.  Accordingly, P&A's motion to strike Donahue's reply is denied.

The Court now turns to the parties' summary judgment motions.

## C.     Summary Judgment Standard

To earn summary judgment, the moving party must show that genuinely undisputed, material facts entitle it, as a matter of law, to judgment.[86]  A fact is "material" when it is essential to the claim.[87]  And a factual dispute is "genuine" if the proffered evidence would permit a reasonable jury to decide the issue in either party's favor.[88]  The movant bears the initial burden to show the lack of evidence on an essential element of the claim.[89]  The nonmovant then must muster forth specific facts showing a genuine issue for trial.[90]  These facts must be clearly

---

[84] *Wagher v. Guy's Foods, Inc.*, 765 F. Supp. 667, 671 (D. Kan. 1991).
[85] *Fox v. Pittsburg State Univ.*, 258 F. Sup. 3d 1243, 1251 (D. Kan. 2017).
[86] Fed. R. Civ. P. 56(a).
[87] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 848, 851 (10th Cir. 2006).
[88] *Id.*
[89] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).
[90] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a summary judgment motion.[91]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[92]

**D.     FDCPA Analysis**

The balance of the parties' cross-motions for summary judgment duel over whether genuinely undisputed facts resolve two questions: (1) did P&A violate the FDCPA; and if so, (2) does the FDCPA's bona fide error defense shield P&A from liability for its violations?  As to the first question, the facts, when appropriately viewed in the opposing party's favor, show that:

- During the November 27, 2017 call, P&A misrepresented that the statute of limitations had not expired on the 2006 debt.

- P&A *may* have committed an actionable deception, by possibly enticing Donahue to spread her payments across her accounts without informing her that any partial payment toward her 2006 debt would revive its statute of limitations.

- During the February 6, 2018 call, P&A made no misrepresentation that it was attempting to garnish Donahue's wages for nonpayment of the 2006 debt.

- During the April 16, 2018 call, P&A falsely represented that it had obtained a judgment against Donahue on the 2006 debt and further created the misleading impression that, as a result, she was responsible for paying the 2006 debt regardless of its old age.

As to the second question, however, disputed facts and unaddressed law leave triable issues as to whether the FDCPA's bona fide error defense shields P&A from any liability.

**—P&A's FDCPA Violations—**

The FDCPA aims to "eliminate abusive debt collection practices."[93]  Donahue argues that P&A violated §§ 1692e and 1692e(2)(A) of the FDCPA.[94] More specifically, Donahue claims that

---

[91] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000).

[92] *LifeWise Master Funding*, 374 F.3d at 927.

[93] 15 U.S.C. § 1692(e); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 577 (2010).

[94] *See* 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); *id.* at § 1692e(2)(A) (expressly including a "false representation of the charter, amount, or legal status of any debt" among the conduct that violates § 1692e).

that P&A made a series of false statements and misleading omissions throughout their several phone conversations between November 2017 and April 2018 that ultimately deceived her as to the character and legal status of the 2006 debt.  Whether P&A violated §§ 1692e or 1692e(2)(A) depends on whether genuinely undisputed facts shows that, under the FDCPA's terms: (1) Donahue is a "consumer"; (2) P&A is a "debt collector"; (3) Donahue's debts arose out of a transaction "primarily for personal, family, or household purposes";[95] and (4) when trying to collect Donahue's outstanding debts, P&A used a "false, deceptive, or misleading representation or means,"[96]—like a "false representation of the character . . . or legal status of [her] debt"[97]—that "was material, in that it had the potential to frustrate the least sophisticated consumer's ability to choose his or her response."[98]

Here, the parties dispute only that fourth element.  In evaluating that element and the at-issue calls between Donahue and P&A, the Court considers "how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—[would] understand" P&A's statements or omissions.[99]  But even the least sophisticated consumer "'can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice'"—or attend to a debt collector's oral statements—"'with some care.'"[100]  That least sophisticated consumer view in mind, the Court now turns the parties' positions.

---

[95] *See id.* at § 1692a(3)–(6).

[96] *Id.* at § 1692e.

[97] *Id.* at § 1692e(2)(A).

[98] *Tavernaro v. Pioneer Credit Recovery, Inc.*, No. 20-2141-KHV, 2020 WL 5747920, at *3 (D. Kan. Sept. 25, 2020).

[99] *Ferree*, 1997 WL 687693, at * (applying, though not formally adopting, the "least sophisticated consumer" standard used by other circuit courts).

[100] *Id.* (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).

1.    **P&A's November 27, 2017 statement concerning the statute of limitations on Donahue's debts**

Donahue first claims that P&A misrepresented that the statute of limitations had not expired on her 2006 debt. Donahue called P&A on November 27, 2017, to discuss her debts and the $75.00 payment she had sent P&A. During that call, the following exchange occurred:

> Donahue:    And I do have a question, on the $75.00, you say you're going to distribute that to four accounts.
>
> P&A:    Yes.
>
> Donahue:    Now, the other ones are uncollectible because there is a statute of limitations.
>
> P&A:    *We actually, um, have kept the statute up on those by renewing your case. So, it's actually not expired . . .*
>
> Donahue:    . . . Okay.
>
> P&A:    *. . . because we've kept it alive.*[101]

Donahue's claim focuses on that italicized language.[102] As previously mentioned, Kansas law requires that an action upon any written agreement, contract or promise be brought within five years.[103] That five-year limitation period restarts whenever a debtor pays any part of the debt or acknowledges the debt in a signed writing.[104] Neither party disputes that Donahue's last payment toward her 2006 debt occurred May 1, 2007. From that fact, Donahue argues that the limitations period on her 2006 debt expired May 1, 2012. She further argues that, when years after that May 2012 date P&A represented that the statute of limitations had not expired on her four accounts, including the 2006 debt, it misrepresented that debt's character and legal status.

For its part, P&A argues that it accurately characterized the statute of limitations as to Donahue's 2006 debt because, notwithstanding the lack of any payment on that debt since May 1,

---

[101] Doc. 101, Ex 5.
[102] *See, e.g.*, Doc. 98, 17.
[103] K.S.A. § 60-511(1).
[104] K.S.A. § 60-520(a).

2007, the debt was otherwise enforceable.  Stated otherwise, P&A argues it made no misrepresentation because the limitations period on Donahue's 2006 debt was, in fact, active and "not expired."  P&A provides two, alternative reasons for its position.  Facts viewed in P&A's favor, however, those positions are legally unsound.

     *a.*  *Donahue's Bankruptcy Plan*

   P&A initially argues that Donahue's bankruptcy repayment plan constituted an entirely new contractual relationship enforceable through a breach of contract action filed within five years from the October 24, 2016 date of her bankruptcy case's dismissal.  P&A defends this position citing *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 58 P.3d 1284 (2002), and the authority discussed therein.  But none of those cases—which involve disputes arising from an active, confirmed Chapter 11 plan—stand for the proposition that a dismissed Chapter 13 plan remains enforceable as a contract.

   In fact, the opposite is true.  Though a "useful analogy," describing a Chapter 13 plan as "new contract" is "inaccurate."[105]  "No meeting of the minds or consideration is required for approval of a [C]hapter 13 plan."[106]  Additionally, and more importantly, dismissal "effectively vacate[s]" a confirmed Chapter 13 plan.[107]

---

[105] *In re Hay*, 413 B.R. 198, 203–04 (Bankr. M.D. Pa. 2008); *see also In re Klaas*, 858 F.3d 820, 830 n.8 (3rd Cir. 2017) ("[W]e have never held that a Chapter 13 plan creates a contract between a debtor and his creditors governed by common law principles.").

[106] *In re Hay*, 413 B.R. at 203–04; *see also In re Quigley*, 391 B.R. 294, 306–07 (Bank. N.D.W. Va. 2008) (explaining why a Chapter 13 "confirmation order is in no way a new contract between a debtor and the debtor's creditors."); *cf. In re Burba*, 1994 WL 709314, at *10 (6th Cir. 1994) ("Although § 1327(a) states that both the debtor and the creditor are bound by the terms of a confirmed Chapter 13 plan, this is not literally true.  The creditors are bound as long as the debtor complies with the plan.  The debtor, however, is free to abandon the plan at any time, and the creditors cannot then force the debtor to comply with the terms of the plan.").

[107] *In re Nash*, 765 F.2d 1410, 1413 (9th Cir. 1985); *see also In re Beaird*, 578 B.R. 643, 648 (Bankr. D. Kan. 2017) ("But 'a Chapter 13 plan is no longer enforceable after a case is dismissed.'"); *In re Chase*, 578 B.R. 43, 54 (Bankr. D. Mass. 2017) ("[P]arties are no longer bound by a confirmed plan once a case is dismissed[,] as a Chapter 13 plan is no longer enforceable after dismissal."); *In re Hamilton*, 493 B.R. 31, 41 (Bankr. M.D. Tenn. 2013) ("[C]ourts have reasonably concluded that dismissal has th[e] effect" of vacating a confirmed Chapter 13 plan); *In re*

> [A]lmost all courts would hold that a Chapter 13 plan is no longer enforceable after a case is dismissed.  A dismissal undoes the bankruptcy case as far as is practicable, and restores the debtor's property rights to the position that they were in at the time the case was filed.  The dismissal of a Chapter 13 case requires disregarding the associated plan.[108]

P&A's position is at odds with this authority.  Whatever obligations Donahue owed P&A under the Chapter 13 plan, those obligations ceased upon dismissal.  At that point, P&A had only the rights available to it at the time Donahue first filed for bankruptcy.[109]  As such, P&A still must show that, at the time of its November 27, 2017 remark, the limitations period on Donahue's debt was active. P&A next asserts exactly that.

### b. K.S.A. §§ 60-517 & 60-519

P&A also asserts that the original five-year limitation period on Donahue's 2006 debt had yet to expire owing to tolling.  Specifically, P&A argues that K.S.A. § 60-517 tolled the limitation period while, from December 2006 to December 2012, Donahue was out of state and allegedly avoiding service.  It also argues that, under K.S.A. § 60-519, Donahue's bankruptcy case stayed the limitations period from the case's January 14, 2013 filing to its October 24, 2016 dismissal. Donahue responds that P&A lacks evidence to support its claim to tolling under K.S.A. § 60-517; so, prior to any other tolling associated with her bankruptcy case, the limitations period on her 2006 debt had already expired.  Evidence viewed in P&A's favor, the Court agrees with Donahue.

When a cause of action accrues against a person, K.S.A. § 60-517 excludes from that action's limitations calculation any "time of [that person's] absence or concealment."  "There is

---

*Sanitate*, 415 B.R. 98, 105–06 (E.D. Pa. 2009) ("Consequently, [a Chapter 13] plan's terms are only effective so long as the case is ongoing.").

[108] *In re Dougherty*, No. AP 11-33926-DOF, 2019 WL 2529362, at *5 (Bankr. E.D. Mich. June 17, 2019) (quoting *In re Demery*, 570 B.R. 220, 226 (Bankr. W.D.La. 2017), and citing several like cases).

[109] *See In re Elms*, 603 B.R. 11, 16 (Bankr. S.D. Ohio 2019) ("It is hornbook law that [11 U.S.C.] § 349, describing the effect of dismissal of a bankruptcy case, seeks, 'to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'").

neither 'absence' nor 'concealment' as those terms are used in K.S.A. § 60-517," however, if the defendant's whereabouts are "known" and the defendant can be lawfully served.[110]  The word "known" in K.S.A. § 60-517 encompasses not only what the plaintiff actually knew about defendant's whereabouts but also what the plaintiff, by the exercise of due diligence, should have known.[111]  "Applying these rules, P&A bears a burden to show that it neither knew nor should have known of Donahue's whereabouts during the period stretching from May 1, 2007 (the date Donahue made a partial payment restarting the five-year clock on P&A's accrued action) to December 2012 (the end-date P&A offers for its 60-517 tolling claim).[112]

P&A lacks such evidence.  The nonconclusory record produced by P&A fails to show that it did anything more to identify Donahue's whereabouts than review "case notes, post office returns, federal and state court filings, Polk Criss Cross Directories, credit reports, internet background checks[,] and records where other attorneys have attempted to serve [Donahue]."[113] "Due diligence" requires the "measure of prudence [that] a reasonable person would make in light of the circumstances."[114]  "[S]itting back and waiting" for the object of service to volunteer her address does not suffice.[115]  Nor does performing computer searches alone typically suffice;

---

[110] *Slayden v. Sixta*, 250 Kan. 23, 26–27, 825 P.2d 119, 122 (1992); *see also* K.S.A. § 60-517 ("This section shall not apply to extend the period of limitation as to any defendant whose whereabouts are known and upon whom service of summons can be effected . . . .").

[111] *Bayless v. Dieckhaus*, 33 Kan. App. 2d 620, 624, 106 P.3d 83, 87 (2005).

[112] *See id.* (assessing an absence-from-the-state tolling claim using this two-part inquiry: "(1) whether [defendant's] whereabouts should have been known to [plaintiff] if [plaintiff] had exercised due diligence and (2) whether service of process could have been effected on [defendant]."); *Underhill v. Thompson*, 37 Kan. App. 2d 870, 876, 158 P.3d 987, 993 (2007) (assessing a concealment-based tolling claim using this two-part inquiry: "(1) Whether the plaintiff in the exercise of due diligence, knew or should have known of defendant's whereabouts, and (2) whether defendant concealed himself.").

[113] Doc. 96-2, 2.

[114] *Underhill*, 37 Kan. App. 2d at 876, 158 P.3d at 993.

[115] *Bayless*, 33 Kan. App. 2d at 626, 106 P.3d at 87–88 ("The exercises of due diligence certainly does not encompass sitting back and waiting for the defendant's insurance company to independently disclose the defendant's new address."); *cf. Morris v. Morris*, 27 Kan. App. 2d 1014, 1020, 10 P.3d 771, 776 (2000) ("[W]e do not believe cooperation is required of the object of service" to avoid concealment-based tolling.).

instead, diligence often is demonstrated through additional efforts, like the hiring of several investigators.[116] Here, though proof of some effort, P&A's actions—and what the Court can make of P&A's wholly unexplained file notes and charts[117]—fail to show the required due diligence to locate and serve Donahue in regard to her 2006 debt.  Accordingly, P&A has failed to show that K.S.A. § 60-517 tolled any portion of the five-year period following Donahue's May 1, 2007 payment.  The limitation period on Donahue's 2006 debt therefore expired May 1, 2012.[118]

### c.    Materiality

Lacking any basis for its representation that the statute of limitations on Donahue's 2006 debt was "alive" and "actually not expired," the Court now turns to the issue of materiality. Materiality can be determined, as a matter of law, if reasonable minds could not differ on the question.[119]  Such is the situation here.  "'Whether a debt is legally enforceable is a central fact about the character and legal status of that debt.'"[120]  When a reasonable, unsophisticated consumer questions a creditor whether it may collect a stale debt, a creditor's false statement that the debt is not time-barred potentially frustrates that consumer's intelligent decision-making with respect to

---

[116] *See, e.g.*, *Underhill*, 37 Kan. App. 2d at 872–73, 876, 158 P.3d at 991, 993 (finding due diligence where plaintiff not only "performed computer services" but also hired "several investigators to locate [defendant's] whereabouts").

[117] P&A and Donahue both bear a burden to designate "with particularity" a record to support their own claims and oppose the other's. D. Kan. Rule 56.1(a)–(b); *see also, e.g.*, *Coleman v. Blue Cross Blue Shield of Kan., Inc.*, 287 F. App'x 631, 634 (10th Cir. 2008) ("By citing to the affidavit in this general way,"—i.e., without "specifically cit[ing] a particular part of the affidavit"—"Plaintiff has failed to comply with the requirement that a [summary judgment] memorandum . . . 'shall refer *with particularity* to those portions of the record upon which the . . . party relies.'").  On this claim, at its own peril, however, P&A has ignored this burden in favor of simply identifying Probasco's affidavit, which in turn summarily identifies 56 pages of exhibits containing unexplained file notes and charts.  Notwithstanding the insufficiency of this designation, the Court has reviewed the exhibits as best it can.  For its efforts, however, the Court ascertains neither: (1) when, if at all, P&A attempted service on Donahue in relation to the 2006 debt during the relevant May 2007 to December 2012 period; nor (2) what measure of investigation supported those service attempts. As a result, P&A's evidence creates the impression that it made minimal, if any, efforts to serve Donahue during the relevant time period, and the only effort it undertook to locate Donahue was to conduct various online searches.

[118] *See* K.S.A. §§ 60-511(1) and 60-520(a).

[119] *Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998).

[120] *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 512 (5th Cir. 2016) (quoting *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 399 (2015)).

the debt.   Thus, "[a] misrepresentation about the limitations period amounts to a 'straightforward' violation of § 1692e(2)(A)."[121]   Reasonable minds could not differ on this point.   And P&A has not argued otherwise.

The Court, therefore, grants Donahue summary judgment against P&A on the issue of whether P&A's November 27, 2017 statement violated the FDCPA.

### 2.      P&A's omissions as to effect of partial payment on the 2006 debt

Donahue next claims that P&A failed to apprise her that making a partial payment on her stale 2006 debt would restart the statute of limitations.   She claims the she repeatedly indicated to P&A her intent to pay only towards the 2002 debt for which P&A had obtained a judgment.   And in return, according to Donahue, P&A promoted that she spread her payments across her debts in order to decrease accruing interest, while also omitting that doing so would restart her 2006 debt's limitations period.   P&A disputes Donahue's claimed payment intent.   But notwithstanding, it argues that, as a matter of law, it was not required to advise Donahue regarding the effect of payment.

In the Court's view, factual issues prevent the Court from resolving Donahue's claim as a matter of law in either parties' favor.   Analogizing to *Smothers v. Midland Credit Mgmt., Inc.*, No. 16-2202-CM, 2016 WL 7485686 (D. Kan. Dec. 29, 2016), and the cases on which it relies, Donahue argues that P&A's omission "is deceptive as a matter of law."[122]   Analogizing to *Douglas v. NCC Bus. Servs., Inc.*, 402 F. Supp. 3d 1257 (W.D. Okla. 2018), P&A argues the opposite. Neither case, however, presents a controlling analogy.

---

[121] *Id.*

[122] *Smothers v. Midland Credit Mgmt., Inc.*, No. 16-2202-CM, 2016 WL 7485686, at *5 (D. Kan. Dec. 29, 2016).

*Smothers* involved an unsolicited collection letter and a stale debt.  The court considered whether the combination of particular statements in the collection letter, coupled with certain omissions, constituted a misrepresentation.  The at-issue statements advised the debtor that, "'The law limits how long you can be sued on a debt.  Because of the age of your debt, we will not sue you for it.'"[123]  And while the letter threatened no litigation, it listed several "Benefits of Paying Your Debt."[124]  The court determined that, though "technically true [when] viewed in isolation," the combination of making those technically true statements and "listing the 'benefits' of paying stale debt—while omitting the concurrent risks of paying the debt—is misleading to the least sophisticated consumer."[125]  The court explained that determination further:

> The least sophisticated consumer most certainly would not be aware that making a payment could make the debt judicially enforceable again—particularly when the collector tells the consumer that the law limits how long she can be sued and that the collector will not sue.  Explaining to the consumer all of the benefits she will receive by making payments on a stale debt, while neglecting to address Kansas law that would make the debt judicially enforceable again, is a misrepresentation of the character and legal status of the debt under the FDCPA.[126]

Accordingly, the court granted summary judgment against the debt collector "as matter of law."[127]

Like *Smothers*, uncontested evidence shows that P&A failed to advise Donahue that paying her 2006 debt would make the debt judicially enforceable.  The context surrounding the omission in *Smothers*, however, depended on a single letter that contained unambiguous enticements.  Here, unlike *Smothers*, the parties offer multiple calls (including, importantly, at least two unrecorded September 2017 calls), assorted file notes, a contested handwritten note, and testimony.  Disputes involving this evidence create ambiguity regarding P&A's efforts to promote to Donahue the

---

[123] *Id.* at *1.
[124] *Id.*
[125] *Id.* at *3.
[126] *Id.* at *5.
[127] *Id.*

benefits of spreading payment across her debts. Owing to those disputes, the Court cannot determine whether or not this case involves the sort of omission-inducement facts that *Smothers* found deceptive as a matter of law.

*Douglas* involved a debtor-initiated call and a stale debt. The debtor, assisted by a "self-styled credit doctor," contacted the debt collector to inquire about the debt after it apparently had contributed to her mortgage application being denied.[128] During the call, the debt collector invited payment. Toward the call's end, the debtor's credit advisor claimed that the debt collector should have disclosed that (1) payment would renew the statute of limitations and (2) the debt collector could not sue the debtor because of the debt's age. In her suit, the debtor claimed that these omissions violated the FDCPA. In rejecting the renewal-nondisclosure claim, the court noted "certain undisputed facts."[129] The "[debtor] and her credit advisor initiated the contact."[130] Nothing the debt collector actually said was "actionably misleading under the FDCPA."[131] And "[t]he phone call included no explicit or implicit threats of litigation."[132] In a case that otherwise "would [have] present[ed] a difficult issue for determination," therefore, the debt collector earned summary judgment.[133]

Like *Douglas*, this case involves debtor-initiated contact and no evidence that, absent Donahue's September 2017 calls, P&A would have tried to collect on Donahue's 2006 debt. And like *Douglas*, this case involves no explicit threats of litigation—at least none that occurred prior to Donahue making her $75.00 payment. But unlike *Douglas*, this case does involve (1) an

---

[128] *Douglas v. NCC Bus. Servs., Inc.*, 402 F. Supp. 3d 1257, 1260 n.4 (W.D. Okla. 2018).
[129] *Id.* at 1265.
[130] *Id.*
[131] *Id.*
[132] *Id.*
[133] *Id.* at 1265–66.

"actionably misleading" statement[134] and (2) disputed evidence as to whether the debt collector promoted rather than simply invited payment.[135]   Donahue has shown that P&A affirmatively misrepresented the status of her 2006 debt.  If P&A coupled that affirmative misrepresentation and its revival-disclosure omissions with sufficient inducements that might lead a reasonable, unsophisticated consumer to spread her payments to a time-barred debt, its omissions would be actionable.  But, as already noted, factual disagreements leave that issue open.

Accordingly, on this claim, the Court denies summary judgment both to Donahue and P&A.

### 3.  P&A's February 6, 2018 statement concerning garnishment

Donahue next claims that during one of two February 6, 2018 calls with P&A, "[P&A] threatened garnishment of [her] wages" for nonpayment of the 2006 debt.[136]   Donahue's first February 6, 2018 call to P&A involved the following exchange:

Donahue:   Hi, this is Susan Donahue.  I had called you and told you I was going to make a payment on the 8th. But I looked on shawneecourt.org, and you guys are attempting to garnish my check.  Is that right?

P&A:   Um, well, let me pull up your account here.  One second.

Donahue:   Okay, because I want to know if there is a court hearing or something to go to on that. [. . .]

[. . . .]

It was filed yesterday.  It says request for garnishment.  Then it says MOT.  I don't know what that means.

---

[134] *But cf. Douglas*, 402 F. Supp. 3d at 1265 ("The court declines to extend liability under the FDCPA to the circumstances of this action . . . .  It is conceivable that . . . a phone call to a debt collector . . . could, in some circumstances, succeed.  But this is not that case.  The court holds as a matter of law that the debt collector *said nothing that was actionably misleading* under the FDCPA.").

[135] *But cf. id.* ("[T]his case would present a difficult issue for determination but for certain undisputed facts . . . [,]" like the closest the debt collector came to any actionable language "was when the debt collector asked, 'How would you like to get that closed out today?'").

[136] Doc. 98, 24.

-33-

P&A:        Okay.  Let me take a look here.   Yeah, *it looks like the legal assistant went ahead and issued the garnishment because you hadn't paid since November* [. . .]

           [. . . .]

Donahue:    Okay.  So, my check Thursday will be garnished?

P&A:        *It looks like they will be, yes.*[137]

Focusing on those italicized statements and the fact that "[P&A] never stated it was attempting garnishment for the 2002 judgment,"[138] Donahue argues that P&A misled her to believe that it was taking an action it legally could not take.

Facts viewed in Donahue's favor, however, nothing said, unsaid, or done here by P&A amounts to an FDCPA violation.  "[W]hile the least sophisticated consumer test 'protects the naïve and credulous,' . . . courts apply this standard in a way that also 'protects debt collectors against liability  for unreasonable misinterpretations of  collection  [communications].'"[139]  Here,  in response to Donahue's questions, P&A advised Donahue that it had "issued" a garnishment request for nonpayment.   Nothing more.   Neither that statement nor any other identified by Donahue actually contain any representation specifically as to Donahue's 2006 debt.   As such, whether Donahue felt misled or not, P&A's statements impart no impression at all as to the 2006 debt.

In evaluating the statement from an omission perspective, moreover, and whether it constituted a threat of unlawful action, it is significant here that uncontroverted evidence shows that P&A's garnishment attempt was lawful.  A "threat to take any action that cannot legally be taken," like threatening garnishment without having a judgment, violates the FDCPA.[140]  Here,

---

[137] Doc. 101, Ex 7.

[138] Doc. 104, 14.

[139] *Kalebaugh v. Berman & Rabin, P.A.*, 43 F. Supp. 3d 1215, 1220 (D. Kan. 2014) (quoting *Clomon,* 988 F.2d at 1319).

[140] 15 U.S.C. § 1692e(5); *see also Fouts v. Express Rec. Servs., Inc.*, 602 F. App'x 417, 421 (10th Cir. 2015) (addressing claim that debt collector "violated § 1692e(2)(A) and e(5) by threatening garnishment without having a judgment.").

however, P&A had obtained a judgment on Donahue's 2002 account and issued garnishment on that account only.[141]  Donahue has neither argued nor produced evidence to the contrary.

As to Donahue's threat of garnishment claim, therefore, the Court grants P&A summary judgment against Donahue.

### 4.     P&A's April 16, 2018 Statements

Donahue finally claims that P&A misrepresented the character and legal status of her 2006 debt in an April 16, 2018 call.  On March 25, 2018, P&A filed a lawsuit against Donahue to recover the 2006 debt.  When Donahue learned of that lawsuit, she called P&A.  Their April 16, 2018 call involved the following exchanges:

| | |
|---|---|
| P&A: | Thank you for holding.  How can I help you? |
| Donahue: | Yeah, I just got off the phone with limited actions.  And I was looking on ShawneeCourt.org, and it shows that you guys are trying to sue me for my medical bills from 2006. |
| P&A: | Ok, well, do you have a case or file number for this account? |
| Donahue: | Ah, the case number, let's see.  I don't have it up here [. . . .] |
| P&A: | Ok, well, let me pull up your account first.  What's the last name? |
| Donahue: | Donahue. |
| | [. . . .] |
| P&A: | Okay, I looked at the notes in your account.  And it looks like we're doing this every few months, that you're calling us and telling us that we can't proceed on you because it's an old account.  Um, *we do have judgment, and we have kept up on that judgment.  So, that is why we were able to pursue you on this debt.* |
| Donahue: | No, you have a judgment on one case—not that one.  The one you have is from 2002, not from 2006. [. . .] |
| P&A: | Okay, well, we have two files that are for you.  We have an '02 file and an '18 file. |
| Donahue: | Okay, the '18 file you never got a judgment on that. |

---

[141] *See, e.g.*, Docs. 98-2, 2 (Donahue's admission P&A "obtained a judgment against [her] on behalf of Stormont Vail . . . regarding the 2002 debt"); 103-3, 1 (showing P&A's garnishment request filed in the 2002 debt case).

P&A:        Okay, well, *regardless, you owe these debts.  It doesn't matter how old they are*.  We may have just filed the account but you . . .

Donahue:  Statute of limitations on debt collection . . .

P&A:        *Ma'am you owe these debts.*  You've already agreed to make a payment plan.  You defaulted the payment plan.

Donahue:  No, not with that one I didn't.  And I'm [unintelligible] . . .

P&A:        We have sent you letters in regards to this, and we . . .

Donahue:  I haven't received any letters.  I haven't had any service . . .

P&A:        Ma'am . . .

Donahue:  . . . You just happen to looking at ShawneeCourt.org . . .

P&A:        We've set up payments.  We've had this runaround numerous times with you that these accounts do exist and that *you do owe them*.[142]

Donahue argues that, by making these italicized statements, P&A falsely represented that it had obtained a judgment against her on the 2006 debt and, as a result, she was responsible for paying the 2006 debt regardless of its old age.

P&A disagrees.  As to its statement about "hav[ing] judgment," P&A argues that Donahue's interpretation is both "unreasonable" (because "[t]he fact that a lawsuit had just been initiated clearly means that there had not been a judgment on the 2006 debt") and "contrary to the record" (because "[Donahue] knew that [P&A] had previously obtained a judgment against her on her 2002 [debt]").[143]  It further argues that telling Donahue she owes her debts no matter their age is an accurate statement of the law, and one P&A made without expressly threatening litigation.

---

[142] Doc. 107, Exs. 9 & 10.

[143] Doc. 107, 22.  P&A additionally argues that none of the three claims Donahue explicitly listed in the pretrial order encompass this alleged violation.  "'The . . . pretrial order measures the dimensions of the lawsuit. . . .'  Claims . . . or theories of damages not included in the pretrial order are waived." *Zenith Petroleum Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016) (citations omitted).  Courts, however, must construe pretrial orders "'liberally . . . to cover any of the legal or factual theories that might be embraced by their language.'" *Id.* (citations omitted).  Here, among her factual contentions in the pretrial order, Donahue stated that P&A told her it "does have a judgment and [it] has kept up on that judgment." Doc. 94, 6.  Among her legal claims, Donahue asserted that P&A "falsely represented the character . . . and legal status of her debt . . . when its representatives . . . maintained [P&A's] ability to collect on the 2006 debt" and that Donahue "was responsible for paying on the 2006 debt regardless of how old it was." Doc. 94, 9.  Affording Donahue's contentions and claims the required liberal construction, the pretrial order covers Donahue's § 1692e(2)(A) claim arising from P&A's statement about "hav[ing] judgment".

Even viewing the facts here in P&A's favor, Donahue's position carries the day.

True, Donahue knew P&A had obtained judgment against her on the 2002 debt.  And true, Donahue does technically owe her debts no matter their age.[144]  But it does not follow from these facts alone that Donahue's FDCPA claim fails.  Donahue's actual knowledge is immaterial.[145]  And under the FDCPA, it is not enough for P&A's remarks to be "technically true if viewed in isolation;" P&A's true remarks must also, in their communication's context, avoid misleading a reasonable, unsophisticated consumer.[146]  This is true when it comes to collecting a time-barred debt, even in the absence of threatened or actual litigation.[147]

P&A, however, actually sued Donahue—and on a time-bared debt, no less.  When Donahue questioned P&A about that suit for "medical bills from 2006," P&A represented that a "judgment" allowed it "to pursue [her] on this debt."  And when that assertion's accuracy was challenged based on the debt's age, P&A repeatedly asserted that the debt was owed notwithstanding its age.  A reasonable, unsophisticated consumer faced with the same lawsuit and representations would believe three things.  First, P&A was not referring to the 2002 debt, as its response was directed to

---

[144] *See Matter of Wernet's Estate*, 226 Kan. 97, 108, 596 P.2d 137, 146–47 (1979) ("The lapse of time does not extinguish an obligation nor satisfy a debt;" rather, as a statute of repose, K.S.A. 60-511 "simply bars the remedy and prevents the obligation or debt as a[n] . . . affirmative defense.").

[145] *See Davis v. Credit Bureau of the S.*, 908 F.3d 972, 980 (5th Cir. 2018) (noting that "[the debtor's] knowledge is not relevant in determining whether an FDCPA violation occurred."); *Douglas*, 402 F. Supp. 3d at 1266 n.8 (refusing to rely on facts tending to show the debtor was not actually misled).

[146] *Smothers*, 2016 WL 7485686 at *3–*5 (evaluating a creditor's statements "in context with the rest of [its collection] letter" to assess its impact on a least sophisticated consumer; *see also Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 430 (3rd Cir. 2018) ("Rather, in keeping with the text and purpose of the FDCPA, we merely reiterate that any such [debt collector communications], when read in their entirety, must not deceive or mislead the least-sophisticated debtor into believe that she has a legal obligation to pay the time-barred debt.").

[147] *See, e.g.*, *Tatis*, 882 F.3d at 428 ("Thus, *Huertas*"—a case on which P&A relies—"stands for the proposition that debt collectors do not violate 15 U.S.C. § 1692e(2)(A) when they seek voluntary repayment of stale debts, so long as they do not threaten or take legal action.  But the FDCPA sweeps far more broadly. . . .  It prohibits '*any* false, deceptive, *or misleading representation*' associated with debt-collection practices.  Accordingly, this appeal requires us to decide whether collection [communications] may run afoul of the FDCPA by misleading or deceiving debtors into believing they have a legal obligation to repay time-barred debts even when the [communications] do not threaten legal action.").

a question about the 2006 debt.  Second, P&A had, in fact, obtained a judgment on that 2006 debt. And so, third, despite the debt's age, the debt was owed, and P&A was suing to enforce its earlier judgment.   These last two impressions are problematic.  P&A had no judgment on the 2006 debt. And its lawsuit and statements created the misleading impression that the 2006 debt was not only owed but legally enforceable.  A debt's legal enforceability "is a central fact about th[at debt's] character and legal status." [148]   As such, what occurred here amounts to a material FDCPA violation.

The Court, therefore, grants Donahue summary judgment against P&A on the issue of whether P&A's April 16, 2018 statements violated the FDCPA.

—<b>P&A's FDCPA Liability</b>—

### 5.        Bona fide error defense

That P&A violated the FDCPA—at least two but possibly three times—does not end the Court's inquiry.  The FDCPA affords P&A an affirmative defense that "insulates debt collectors from liability even where they have violated the FDCPA."[149]  That defense is available to P&A at summary judgment only if it proves, by a preponderance of the genuinely undisputed evidence, that its violations were "(1) unintentional, (2) bona fide error[s], and (3) made despite the maintenance of procedures reasonably adapted to avoid the error[s]."[150]  P&A meets its first burden if it shows that it erred with no "specific intent to violate the [FDCPA]."[151]  It meets its second burden if the circumstances prove its unintentional errors objectively reasonable.[152]   And it

---

[148] *Daugherty*, 836 F.3d at 512 (quoting *Buchanan*, 776 F.3d at 399).
[149] *Johnson v. Riddle* (*Johnson II*), 443 F.3d 723, 727 (10th Cir. 2006).
[150] *Id.* at 727–28; *see also* 15 U.S.C. § 1692k(c)).
[151] *Johnson II*, 443 F.3d at 728.
[152] *Id.* at 729 ("[the bona fide] component serves to impose an objective standard of reasonableness upon the asserted unintentional violation." (alteration original and quotation marks omitted)).

completes its burden if it also shows that it "actually employed or implemented" procedures "reasonably adapted" to avoid its specific errors.[153]

But in this case, factual and legal issues prevent the Court from deciding P&A's ability to carry its burden.

As illustrated in the facts section above, Donahue and P&A dispute P&A's intent and whether P&A actually implemented its own error-avoiding procedures. P&A's subjective intent is "principally a credibility question."[154] And where, as here, the case to some degree involves a mistake of law, whether P&A's mistakes were bona fide may turn on its due diligence practices. Though P&A claims, with some support, that it made only unintentional, good faith errors despite its own diligently implemented procedures, Donahue offers inferential evidence to contest P&A's assertions.[155] As such, triable issues remain.

Inextricably intertwined with P&A's two actual errors and one potential error, moreover, is P&A's legal position that Donahue's 2006 was enforceable under an active statute of limitations. The parties, however, summarily disagree whether the bona fide error defense covers the sort of mistake of law underlying P&A's position.[156] P&A relies on *Johnson v. Riddle* (*Johnson I*), 305 F.3d 1107 (10th Cir. 2002). Donahue relies on *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).

In *Johnson I*, a case involving a FDCPA violation traceable to a mistaken interpretation of Utah law, the Tenth Circuit decided "the FDCPA bona fide error defense can apply to a mistake

---

[153] *Id.* ("[T]he procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector 'maintained'—i.e., actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue.").

[154] *Id.* at 728 (quotations and quotation marks omitted).

[155] *Compare, e.g.*, Doc. 96, 28–34 *with* Docs.104, 38–45.

[156] *Compare* Doc. 98, 18 *with* Doc. 103, 34.

of law."[157]   The Tenth Circuit then applied that rule in *Johnson II*.[158]   After those decisions, the

Supreme Court decided *Jerman*.   There, the Supreme Court determined that the FDCPA's bona

fide error defense "does not apply to a violation of the FDCPA resulting from a debt collector's

incorrect interpretation of the requirements of [the FDCPA]."[159]   In so deciding, the Court

distinguished *Heintz*[160]—the exact case on which *Johnson I* found its conclusion "bolstered."[161]

But in *Jerman*, the Court also explicitly reserved deciding whether the bona fide error defense

"applies when a violation results from a debt collector's misinterpretation of the legal requirements

of state law."[162]

Since *Jerman*, neither this district nor the Tenth Circuit has had occasion to review

*Jerman*'s impact on *Johnson I & II*.   Elsewhere, it appears an open question whether the bona fide

error defense extends its protection in cases of this sort involving mistakes of state law.[163] Neither

party, however, has addressed the question from that perspective.   And the extent to which this

case's disputed facts may or may not influence that analysis, moreover, convinces the Court that

neither party has entitled itself to judgment as a matter of law on the issue of P&A's liability for

its actual and potential FDCPA violations.

---

[157] *Johnson v. Riddle* (*Johnson I*), 305 F.3d 1107, 1121 (10th Cir. 2002).

[158] *See generally Johnson II*, 443 F.3d 723 (10th Cir. 2006).

[159] *Jerman*, 559 U.S. at 604–05.

[160] *Id.* at 593–94 ("[The debt collector's] reliance on *Heintz* . . . is also unavailing.").

[161] *Johnson I*, 305 F.3d at 1123 ("Our conclusion is bolstered by the Supreme Court's reasoning in *Heintz*.").

[162] *Jerman*, 559 U.S. at 580 n.4.

[163] *See, e.g., Thompson v. Midland Funding, LLLC*, 375 F. Supp. 3d 774, 784–87 (E.D. Ky. 2019) (noting Sixth
Circuit cases on both sides of the issue, before concluding, under the case's facts, that the bona fide error defense was
inapplicable to the debt collector's misapprehension of the applicable statute of limitations); *Barenbaum v. Hayt, Hayt
& Landau, LLC*, No. 18-4120, 2019 WL 4305761, at *7–*9 (E.D. Pa. Sept. 2019) (noting cases on both sides, before
siding in favor of restricting the defense); *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. 2015) (offering
dicta to the effect that *Jerman*'s "discussion of the [FDCPA's] affirmative defense makes clear that mistakes of state
law can give rise to liability.").

### III.    Conclusion

A partial payment on a stale debt is no small thing.  When a debt collector induces such a payment or further payments through false statements and misleading omissions, its conduct falls within the "abusive, deceptive, and unfair debt collection practices" at which the FDCPA aims its protections.[164]  In this case, the admissible evidence and appropriate arguments show that P&A violated those FDCPA protections at least two, possibly three, but not four times.  On the record presented, however, those violations may or may not be excusable.  Triable issues remain.

**IT IS THEREFORE ORDERED** that Plaintiff Donahue's Motion to Strike Defendant's Exhibits (Doc. 105) is hereby **DENIED IN PART AND GRANTED IN PART.**

**IT IS FURTHER ORDERED** that Defendant P&A's Motion to Strike Plaintiff's Reply in Support of Her Motion for Summary Judgment (Doc. 109) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant P&A's Motion for Summary Judgment (Doc. 95) is hereby **DENIED IN PART AND GRANTED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff Donahue's Motion for Summary Judgment (Doc. 97) is hereby **DENIED IN PART AND GRANTED IN PART.**

**IT IS SO ORDERED**.

Dated this 30th day of October 2020.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[164] 15 U.S.C. § 1692(a), (e).